ALLEN v. LUDINGTON STATE BANK.

SPECIFIC PERFORMANCE—VENDOR AND PURCHASER—MEMORANDUM —LANDLORD AND TENANT.

Where complainant, for the purpose of running a disorderly house, entered into an arrangement with defendant bank, which it claimed was a lease of the premises, but which complainant contended was a contract of purchase on monthly installments, evidenced by a brief and insufficient memorandum, subscribed by the president of defendant in his own

name, and where complainant was given receipts for rent at the time of nearly every payment and the bank frequently made repairs on her demand, it was *held,* that the court was warranted in refusing a decree of specific performance.

Appeal from Mason; Withey, J. Submitted January 24, 1912. (Docket No. 79.) Decided March 12, 1912.

Bill by Mabel Allen against the Ludington State Bank, Charles G. Wing, John H. Cota, Frances Cota, and Hattie McDonald for specific performance of a contract for the sale of land. From a decree for defendants, dismissing the bill of complaint, complainant appeals. Affirmed.

*Robert J. Quail,* for complainant.

*M. B. Danaher* and *H. G. Reek,* for defendants.

STEERE, J. This suit involves a piece of real estate in the city of Ludington, known as the north 175 feet of lot 4 of block 83, except the south 50 feet, reserved for street purposes, of the original plat of the city of Ludington.

The bill of complaint is filed for specific performance of an alleged contract for the purchase of this property, or, in lieu thereof, a money judgment against certain of the defendants for the difference between the sum paid by complainant and the value of the use of the premises while she occupied them; and also to obtain an injunction, restraining defendant Cota from further prosecuting an ejectment suit brought to dispossess complainant.

At the conclusion of the trial in the circuit, the court, after having heard the testimony and arguments of counsel, offered some pertinent reflections as to the atmosphere surrounding the transaction, and gave it as his conclusion that neither party appeared before the court with clean hands, and thereupon dismissed the proceedings, without costs to either party.

At the hearing it appeared, undisputed, that complainant had been in possession of these premises since September, 1906, maintaining thereon a bawdyhouse, paying

monthly to the Ludington State Bank, of which defendant Wing was president, the sum of $25. During this time there was a series of conveyances and transactions with this property, in some of which defendant Wing acted as scrivener and legal adviser, resulting in complications by which it is claimed, on the part of complainant, that she bought the house and lot for $1,000, to be paid for at the rate of $25 per month, and on the part of the defendant that she was merely a tenant, paying a monthly rental of $25.

As early as 1901, this property belonged to defendant Hattie McDonald, who had become indebted to the Ludington State Bank, which held a mortgage thereon. In 1906 she deeded it to the bank to facilitate an actual sale of it to a man named Brady, as it is claimed, which sale was never consummated. The title of record remained in the bank until 1907, when it was reconveyed to her; she giving a mortgage on the property to the bank for the amount it was claimed she was owing it. In October, 1907, she deeded it to defendants John and Frances Cota, who gave back to her a mortgage, which, in August, 1908, she assigned to the bank. In March, 1910, Cota began an ejectment suit against complainant, having previously served on her notice to quit for nonpayment of rent.

While title to this property was in the bank, defendant Wing gave to a woman named Pearl Eddy the following memorandum in writing:

"Mrs. Pearl Eddy to have a land contract for lot 4, block 83, for one thousand dollars, payable $25 monthly, with interest at 5 %.
"September 10, 1906.
"C. G. WING."

This memorandum was shortly afterward assigned to the complainant.

It is in evidence in behalf of complainant that about the time this memorandum was made Pearl Eddy attempted to rent or buy this property from Mr. Wing to use as a "ladies' house," and was informed by him that it could not be rented for such purposes, but could be sold.

That as a result of their negotiations a contract was made, as evidenced by the memorandum. It is further claimed by complainant that this deal was in fact made for complainant; Pearl Eddy not desiring or intending to occupy the property. That complainant, after receiving the assignment, interviewed Wing, asking him if Hattie McDonald had any interest in the property, informing him of the fact that she had an assignment of the memorandum and intended to use the place as a disorderly house. That Wing told her that dealings must be entirely with the bank, and that Hattie McDonald had nothing to do with it. That thereafter monthly payments were made according to the terms of the contract; one payment being made, for which a receipt was given reading as follows:

"September 9, 1907. Received of Mabel Allen fifty dollars payment as interest on land contract she claims to hold for Hattie McDonald property.

"C. G. WING, President."

That $25 per month was paid on this contract for the period of 50 months, and the full amount of the purchase price and interest have now been paid in accordance with the terms of the memorandum, except $50 which she has tendered, with a demand for a deed of the property.

It is in evidence in behalf of defendants that this property belonged to Hattie McDonald until sold by her to the defendants Cota; that the interest of the Ludington bank was only that of a mortgagee, the title for a time being in the bank by a deed which was in fact but a mortgage, the same having been given only to facilitate a sale which Hattie McDonald had negotiated, as heretofore stated; that arrangements were made for all rentals to be paid to the bank to apply on the indebtedness to it; that Pearl Eddy's negotiations were with Hattie McDonald, and not with the bank, Mr. Wing simply acting as scrivener and legal adviser; that on the 10th of September Pearl Eddy and Hattie McDonald, having negotiated some sort of a contract of sale of the property, went to Wing and stated to him the tentative bargain, proposing to come later and

have a formal land contract drawn up; that in the meantime, at the request of Pearl Eddy, he handed to her the memorandum upon which complainant relies; that no contract was entered into or consummated by the parties at the time, it being fully understood and agreed that they should meet later, when the matter of taxes, insurance, and repairs and other details would be agreed upon and set forth in a regularly executed instrument; that neither Mabel Allen nor Pearl Eddy ever made any bargain or agreement with Wing or the bank in regard to this property, and that he never made any statements to them in regard to selling rather than renting the property for the purpose they state; that Mabel Allen, being in possession of the property as a tenant, regularly paid her rent to the bank, which was received for Hattie McDonald and applied on her indebtedness; that some time later she claimed to have a contract for the property from Hattie McDonald, and, without knowing what the facts were, Wing took $50 she tendered him and gave a receipt for the same, as she requested, which was credited on Hattie McDonald's indebtedness; that two or three other receipts of like import were given her at her request under the same representations; that the rent she paid was the same as other women before her had paid for the same property for the same purposes; that she paid no taxes, insisted on repairs, refusing to pay further rent, unless the same were made, and that repairs were made and the taxes paid by the bank, being charged to Hattie McDonald, against whom the mortgage was held; that the board of directors of the bank never considered or acted upon any contract with complainant, and had no interest in the property beyond security for. the debt which Hattie McDonald owed; that the defendants Cota purchased this property directly from Hattie McDonald in good faith, believing she had title thereto, subject to the mortgage, and having no knowledge of complainant's claim, simply supposing she was a tenant paying rent.

It appears to be undisputed that during her occupancy

of the premises complainant, in monthly installments, made payments aggregating $1,050, the last being on January 8, 1910, at which time she ceased payments, but remained in possession of the premises, and was still in possession at the time this case was heard in circuit court. Most of the receipts given are for monthly payments, stating that they are for rent of the premises. Aside from the $50 receipt already referred to, of the 40 receipts given to her, three state the payments are to apply on Hattie McDonald's mortgage, and one, of June 8, 1908, "on contract claimed to hold for H. McDonald."

It appears that in July, 1907, there was some litigation between complainant and Hattie McDonald before a circuit court commissioner, the nature of which is not disclosed by the record, but the same was settled; the following receipt being given to and accepted by complainant through her attorney:

"$25.00                LUDINGTON, July 8, 1907.
"Received of Mabel Allen, per M. Quail, twenty-five and 0/00 dollars.
"Rent due Mrs. Hattie McDonald in suit before me.
          [Signed]        "H. G. REEK,
               "Circuit Court Commissioner."

It is quite evident that defendant Wing, who appeared on the trial of the cause in the dual capacity of counsel and chief witness for the defense, was familiar with the property and the purpose for which it was used. He testifies:

"I have had the management of this property since the loan to Hattie McDonald, which, I think, was made in the year 1901. I never had to do with the management of the property, except in the sense of paying the taxes and occasionally keeping it out of trouble. * * * It was in the fall of 1906 * * * that Mabel Allen, who was then paying rent, as others had been for years before, at the same rate, had sent word to me that the roof was leaking; that the house was untenantable; and that she would not pay the rent, unless it was fixed up. * * * Anyway, I had to go and do such jobs; * * * and

there was where I saw the situation—the kind of place it was."

It might well be inferred from the testimony of the chief witnesses in this case that there was some understanding between the parties that at certain times and for certain purposes this property was to be treated as sold or rented, according to the exigencies which might arise; but we do not think that under the facts disclosed by this record the writing relied on by complainant can be construed as a valid and enforceable land contract entitling her to specific performance. It is but a scant memorandum, handed to Pearl Eddy by Wing, acting for Hattie McDonald, with whom Pearl Eddy was negotiating a deal. On its face it shows that it is tentative—not that she had a contract, but is "to have a land contract." It bears but this brief indorsement, without date: "Transferred to Mabel Allen. Pearl Eddy." It appears, undisputed, that neither the bank nor Wing had any interest in the property at that time, except as security for a loan. Wing's explanation that he was acting only for Hattie McDonald as a scrivener and an attorney, giving this memorandum for her to show Pearl Eddy what the contract would be, provided they finally consummated it, seems reasonable and in harmony with the history of this transaction as a whole. He did not then own the property, and Pearl Eddy knew it, and the woman who did own it was present negotiating with her.

Complainant was in possession of this property at that time as a tenant according to her own testimony. She says, in detailing her conversation with Wing:

"I asked him if it was all right for me to pay the $25 she had loaned me, and pay this month's rent that was due the 1st, and he said that would be all right."

She took receipts for rent without protest during all these years, demanded at times repairs, refusing to pay more rent until they were made, accepted a receipt for rent in settlement of the litigation with Hattie McDonald

nearly a year after she had gone into possession of the property, and never paid any taxes on it. Her possession began as a tenant. She later claimed that she had a contract from Hattie McDonald, and had some receipts of that import given her by the bank. Her conduct during much of the time she occupied the property is not consistent with her present claim of ownership. The rent she paid was the same as that previously paid by women for the same property for the same purpose. In view of this purpose for which the house was used, with the added benefits of officials of the bank making repairs, paying taxes, "and occasionally keeping it out of trouble," it cannot be inferred, by reason of the amount, that the monthly payments were payments on a contract, rather than for rent.

On this record, taken as an entirety, we are not satisfied that complainant has shown, by a preponderance of the evidence, that she has an enforceable contract, and think that the trial court was not in error in dismissing the case, leaving the parties where it found them.

The decree is affirmed, without costs to either party.

MOORE, C. J., and McALVAY, BROOKE, BLAIR, STONE, and OSTRANDER, JJ., concurred. BIRD, J., did not sit.